WHATLEY, Judge.
The Department of Children and Family Services appeals a circuit court order titled, “Order Denying Petition for Termination of Parental Rights, but Finding Dependency as to Mother, [D.W.], and as to Father, [T.E.], and Scheduling Disposition and Directing Preparation of Final Judgment of Dependency as to Both Parents.” T.E. filed a cross-appeal challenging that part of the order finding that the child, S.E., was dependent. We reverse this cause for a new hearing on the Department’s petition to terminate parental rights because the circuit court improperly allowed T.E.’s expert to testify as to statements of facts and opinions contained in medical literature.[1]
In its petition to terminate parental rights, the Department alleged that the parents engaged in egregious conduct toward S.E. or they had the capability and opportunity to prevent such and knowingly failed to prevent egregious conduct that threatened “the life, safety, or physical, mental or emotional health of the child.” At the hearing on the petition to terminate parental rights, the Department presented the testimony of Doctor Caroline Kerry, who testified that on February 28, 2005, she diagnosed S.E. with having both acute and subacute subdural hematomas on the right side of his brain. The subacute injury was two to three weeks old and the acute injury was a few hours old. Doctor Kerry testified that S.E. required emergency surgery to relieve intracranial pressure. Doctor Kerry opined that the child’s injuries, which included the subdural he-matomas, retinal hemorrhages, global brain injury, rib fractures and possible leg fractures; were indicative of shaken baby syndrome.
The Father presented the testimony of Doctor Ronald Uscinski, who testified that he did not believe that shaking a baby could cause injury to the brain. In support of this opinion, Doctor Uscinski testified regarding the contents of three articles published in medical literature. He first testified about an article published in the Journal of Neurosurgery in 1976 and 1978 concerning a Japanese study of adult patients with subdural hematomas. Doctor Uscinski also testified regarding the contents of an article titled “Shaken Baby Syndrome, a Clinical, Bio-Mechanical and Pathological Study,” which was also published in the Journal of Neurosurgery. Doctor Uscinski further related the contents of another article published in the same journal and testified, “I think it’s called Anthropomorphic, A-N-T-H-R-OP-O-M-O-R-P-H-I-C, Simulations of Falls, Impacts, and I forgot the entire title.” Doctor Uscinski testified that the conclusions reached by-the above articles supported his opinion on shaken baby syndrome. We conclude that the circuit court erred in allowing Doctor Uscinski to testify regarding the contents of these articles.
Section 90.706, Florida Statutes (2004), provides that statements of fact or opinion may be used to cross-examine an expert if the trial court or the expert recognizes it as authoritative:
Statements of facts 'or opinions on a subject of science, art, or specialized knowledge contained in a published treatise, periodical, book, dissertation, pamphlet, or other writing may be used in cross-examination of an expert witness if *622 the expert witness recognizes the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative, or, notwithstanding nonrecognition by the expert witness, if the trial court finds the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative and relevant to the subject matter.
However, “an expert cannot bolster his or her testimony by testifying that a particular treatise supports an opinion.” Linn v. Fossum, 946 So.2d 1032, 1036, 2006 WL 3093186 (Fla. Nov. 2, 2006). As noted by the supreme court in Linn, a treatise is inadmissible hearsay, and when the expert’s testimony acts as a conduit for such, the opposing party cannot cross-examine and impeach the source of the hearsay. Id.
Similar to the present case, in Donshik v. Sherman, 861 So.2d 53 (Fla. 3d DCA 2003), the plaintiffs expert was allowed to testify regarding findings from an Asymptomatic Carotid Atherosclerosis Study. The Third District held as follows:
Section 90.706 does not permit statements in a learned treatise to be used as substantive evidence since the treatise would be hearsay if offered as substantive evidence.... Florida Courts have uniformly held that published treatises, books or writings such as the ACAS report, which purport to be authoritative, may not be used on direct examination as substantive proof to bolster the credibility of a party’s expert witness.
Id. at 56; see also Cordoba v. Rodriguez, 939 So.2d 319, 323 (Fla. 4th DCA 2006) (holding that it was fundamental error to allow expert to testify about an article in the Palm Beach Post, which article concluded that ninety-nine percent of automobile accidents result in lawsuits, to support his opinion concerning the appellees’ injuries); Schwarz v. State, 695 So.2d 452, 455 (Fla. 4th DCA 1997) (noting that statements in a treatise are inadmissible during the direct examination of an expert witness).
In the present case, Doctor Uscinski improperly bolstered his opinion by testifying regarding the contents of three articles published in the Journal of Neurosurgery. These articles were inadmissible hearsay and permitting the presentation of this otherwise inadmissible hearsay “merely because an expert relied on it in forming an opinion undermines the rules of evidence that would have precluded its admission.” Linn, 946 So.2d at 1038. The Department was unable to cross-examine the authors of the articles regarding their qualifications or any aspect of their studies.
Accordingly, we reverse this cause for a new trial on the Department’s petition to terminate the parental rights of the Father and the Mother.
SILBERMAN, J., and DANAHY, PAUL W., Senior Judge, Concur.

. The cross-appeal is therefore moot.