MAKAR, J.,
concurring.
I concur in full, but make two points. First, the State devotes almost twenty-five *496 of its thirty-six page response to why statutory revival is the correct legal path to follow at sentencing in this class of post-Miller[1] cases, a position with which I am sympathetic. See Partlow v. State, — So.3d -, 2013 WL 45743, 38 Fla. L. Weekly D94 (Fla. 1st DCA Jan.4, 2013) (Makar, J., concurring in part, dissenting in part). Defense counsel follows suit, counter-arguing that no statutorily-authorized sentence exists for the charged offense and that statutory revival would be improper. Absent en banc review, however, we are not in a position in this case to resolve this important issue, one this Court has decided to defer so that trial courts get the first cracks at determining the range of lawful sentencing options. See Washington v. State, 103 So.3d 917, 920 (Fla. 1st DCA 2012).
Second, in providing advice on possible sentences for the first degree murder charge, defendant and his counsel would prefer greater certainty about which options might apply; indeed, the State would like greater certainty as well. What safely can be said at this juncture is that the defendant, if convicted, likely faces one of three lengthy sentences: life without parole (after a youth-mitigation hearing) (Washington); life with parole-eligibility after twenty-five years (the statutory revival argument); or a substantial term of years (Judge Wolfs position in Washington and Partlow). A fourth possibility, that an appellate court will hold that no sentencing option exists for a first degree homicide, even if committed by a sixteen year-old (the defendant’s age at the time of the charged offense), appears highly unlikely given these other viable options. Thus, the range of probable sentences in this case is narrow and skewed toward a life sentence. This minor degree of variance in potential sentencing options as to the charge of first degree murder does not raise a due process issue that justifies the extraordinary relief sought at this juncture of the case. This is particularly true given that the maximum penalty is known with certainty (life without parole after youth mitigation inquiry) and that a wide range of potential plea negotiations as to possible lesser offenses remains available should the prosecution and defense desire to do so.
Though not a due process case, it bears noting that in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the juvenile offender faced a far greater variance in his possible sentence for armed burglary (a term of years up to life without parole) than does the defendant here. Of course, Graham knew with certainty the range of possible sentences up to and including the possibility of (no-longer-lawful) life without parole, while the defendant here does not. But it is apparent that the range of likely sentences for the first degree murder charge in this case is constricted, making it a less than compelling one for the extraordinary writ of prohibition. Trials must go forward and, as this Court has said, trial judges must consider the legality of sentencing options in the first instance. Thus, I agree the writ should be denied.

. Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)